IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DEMOCRACY FORWARD FOUNDATION,<br>P.O. Box 34553<br>Washington, D.C. 20043<br><br>*Plaintiff*,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOUSING AND<br>URBAN DEVELOPMENT<br>451 7th Street S.W.<br>Washington, DC 20410<br><br>U.S. DEPARTMENT OF STATE<br>2201 C Street, NW<br>Washington, DC 20520<br><br>*Defendants*. | Case No. 25-2020 |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Democracy Forward Foundation ("DFF") brings this action against Defendants the U.S. Department of Housing and Urban Development ("HUD") and the U.S. Department of State ("State") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Plaintiff alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2. Venue is proper under 28 U.S.C. § 1391(e), as Defendants' headquarters are in Washington, D.C., within this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

### Parties

3. Plaintiff DFF is a not-for-profit organization incorporated under the laws of the District of Columbia and based in Washington, D.C.  Plaintiff works to promote transparency and accountability in government, in part, by educating the public on government actions and policies.

4. Defendant HUD is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  HUD has possession, custody, and control of records to which Plaintiff seeks access.

5. Defendant State is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  State has possession, custody, and control of records to which Plaintiff seeks access.

### Facts

6. Public reports indicate that since the Inauguration, the Trump Administration has been rapidly developing and deploying generative Artificial Intelligence ("AI") across the federal government to execute dramatic and unprecedented actions and directives of great public importance.

7. Reported actions and directives include using AI to terminate federal workers and

eliminate programs,[1] surveil viewpoints of private individuals and federal employees,[2] review and rewrite agency rules and regulations,[3] and cancel contracts.[4]

8. On information and belief, State has used AI to review information related to visa holders as part of a process of revoking visas and thus responsive records exist.[5]

9. On information and belief, at HUD, Department of Government Efficiency ("DOGE") affiliated staff have employed AI tools as a part of an effort to propose rewriting the agency's regulations and thus responsive records exist.[6]

10. DFF filed several FOIA requests to shed light on the Trump Administration's use of AI in carrying out key government functions.

*State Personnel Matters Request (F-2025-11135)*

11. On March 3, 2025, DFF sent a FOIA request to State seeking the following:

---

[1] *See, e.g.*, Jeff Stein et al., *In chaotic Washington blitz, Elon Musk's ultimate goal becomes clear*, Wash. Post (Feb. 8, 2025), https://perma.cc/PVY2-265U (reporting "DOGE associates have been feeding vast troves of government records and databases into artificial intelligence tools, looking for unwanted federal programs and trying to determine which human work can be replaced by AI, machine-learning tools or even robots").

[2] *See, e.g.*, Marc Caputo, *Scoop: State Dept. to use AI to revoke visas of foreign students who appear 'pro-Hamas,'* Axios (Mar. 6, 2025), https://perma.cc/8GVN-B4DT (reporting the State Department is launching "an AI-fueled 'Catch and Revoke' effort" "which includes AI-assisted reviews of tens of thousands of student visa holders' social media accounts"); *see also* Alexandra Ulmer et al., *Exclusive: Musk's DOGE using AI to snoop on U.S. federal workers, sources say*, Reuters (Apr. 8, 2025), https://perma.cc/3RXA-2WC2/ (reporting "Trump administration officials have told some U.S. government employees that Elon Musk's DOGE team of technologists is using artificial intelligence to surveil at least one federal agency's communications for hostility to President Donald Trump and his agenda").

[3] *See, e.g.*, David Gilbert et al., *DOGE put a college student in charge of using AI to rewrite regulations*, Wired (Apr. 30, 2025), https://perma.cc/LM9U-48ZZ (reporting "A DOGE operative has been tasked with using AI to propose rewrites to the Department of Housing and Urban Development's regulations—an effort sources are told will roll out across government").

[4] *Supra* note 1 (reporting DOGE staffers "have begun using AI to analyze [a] department's financial data, aiming to cancel every contract that is not required by law or essential to the department's operations").

[5] *Supra* note 2.

[6] *Supra* note 3.

3

(1) All validation studies and privacy impact assessments related to the use of automated systems or generative artificial intelligence for personnel matters (including, but not limited to, determining who to hire and fire, assessing the productivity or the ideological or partisan opinions of federal employees, investigating who has spoken or might be likely to speak to the media about government work, or surveilling employees).

(2) All final guidance, memoranda, or directives created by your agency related to the usage of automated systems or generative artificial intelligence for personnel matters (including, but not limited to, determining who to hire and fire, assessing the productivity or the ideological or partisan opinions of federal employees, investigating who has spoken or might be likely to speak to the media about government work, or surveilling employees).

(3) All source code, training materials, or parameters given to or used by automated systems or generative artificial intelligence tools used for personnel matters (including, but not limited to, determining who to hire and fire, assessing the productivity or the ideological or partisan opinions of federal employees, investigating who has spoken or might be likely to speak to the media about government work, or surveilling employees).

(4) All searches, instructions, queries, or inputs into automated systems or generative artificial intelligence tools used for personnel matters (including, but not limited to, determining who to hire and fire, assessing the productivity or the ideological or partisan opinions of federal employees, investigating who has spoken or might be likely to speak to the media about government work, or surveilling employees).

12. This request sought all records from January 20, 2025, until the date of the search.

13. On March 3, 2025, State acknowledged DFF's request and assigned it tracking number F-2025-11135.

14. On March 17, 2025, State informed DFF that it would not be able to respond to this request within the 20 days provided by statute due to "unusual circumstances." State also denied DFF's fee waiver request and tolled further processing of the FOIA request until DFF confirmed willingness to pay the estimated direct cost of duplication fees.

15. On March 19, 2025, DFF confirmed willingness to pay via email, but reserved the right to appeal the fee waiver denial and conditioned willingness to pay on State's compliance with the time limits for providing a determination under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

16. On March 31, 2025, State noted DFF's willingness to pay but declined to incorporate DFF's caveats and proposed modifications, asserting that DFF could raise these points of contention on appeal.

17. DFF has received no subsequent communication from State regarding this FOIA request.

*State Student Visa Holders Request (F-2025-12067)*

18. In light of public reports indicating that the State Department is using AI to review information related to international student visa holders,[7] on March 17, 2025, DFF sent a FOIA request to State seeking the following:

(1) All validation studies and privacy impact assessments related to the use of automated systems or generative artificial intelligence to review online news reports or lawsuits about student visa holders, or social media accounts of student visa holders, who have engaged in protests, demonstrations, or other associational, expressive, or speech-related activities.

(2) All final guidance, memoranda, or directives created by your agency related to the usage of automated systems or generative artificial intelligence to review online news reports or lawsuits about student visa holders, or social media accounts of student visa holders, who have engaged in protests, demonstrations, or other associational, expressive, or speech-related activities.

(3) All source code, training materials, or parameters given to or used by automated systems or generative artificial intelligence tools used to review online news reports or lawsuits about student visa holders, or social media accounts of student visa holders, who have engaged in protests, demonstrations, or other associational, expressive, or speech-related activities.

(4) All searches, instructions, queries, or inputs into automated systems or generative

---

[7] *Supra* note 2.

artificial intelligence tools used to review online news reports or lawsuits about student visa holders, or social media accounts of student visa holders, who have engaged in protests, demonstrations, or other associational, expressive, or speech-related activities.

19. The request sought records from January 20, 2025, through the date of the search.

20. On March 17, 2025, State acknowledged DFF's request and assigned it tracking number F-2025-12067.

21. On April 7, 2025, State informed DFF that State would not be able to respond to this request within the 20 days provided by statute due to "unusual circumstances."

22. On May 29, 2025, State sent a short email informing DFF that the status of this request had been updated to "in process."

23. DFF has received no subsequent communication from State regarding this FOIA request.

*HUD AI Communications Request (25-FI-HQ-02542)*

24. On May 7, 2025, DFF sent a FOIA request to HUD seeking the following:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, calendar invitation attachments, text messages, or messages on messaging platforms, including Slack and Microsoft Teams) sent or received by (A) the agency officials listed below containing (B) any of the following key terms.
>
>     A. Federal employees:
>   1. Secretary Scott Turner
>   2. Anyone serving in the role of deputy secretary
>   3. Anyone serving in the role of chief of staff to the Secretary or Deputy Secretary
>   4. Anyone serving in the role of deputy chief of staff to the Secretary
>   5. Christopher Sweet
>   6. Scott Langmack
>   7. Any USDS or Department of Government Efficiency ("DOGE")-affiliated employees based at or detailed to HUD
>
>     B. Key terms

      1. "Large language model"
      2. LLM
      3. "Machine learning"
      4. "Natural language processing"
      5. NLP
      6. Surveil
      7. Surveillance
      8. "AI-driven system"
      9. "AI-driven strategy"
    10. "AI-driven strategies"
    11. ADS
    12. "Automated decision-making technology"
    13. ADMT
    14. "Automated process"
    15. "Automated processes"
    16. "Automated processing"
    17. "Neural network"
    18. "Machine learning"
    19. Chatbot
    20. Grok
    21. xAI
    22. ChatGPT
    23. Gemini
    24. "Generative AI"
    25. Azure
    26. Watson
    27. AutoRIF
    28. "Automated Reduction in Force"
    29. "Automated Reduction-in-Force"
    30. "Department of Government Efficiency AI Assistant"

25. The request sought records from January 20, 2025, through the date of the search.

26. The request further noted that a search for responsive records to parts 1 and 2 of the request must include both official and personal devices and applications such as Signal, iMessage, and WhatsApp given public reporting that government officials have been using personal devices and non-government messaging applications to conduct government business.[8]

---

[8] *See, e.g.*, Jeffrey Goldberg, *The Trump Administration accidentally texted me its war plans*, Atlantic (Mar. 24, 2025), https://perma.cc/74XJ-94TA; Steve Witkoff (@SteveWitkoff), X (Mar. 26, 2025, 9:20 AM), https://perma.cc/W5SE-VGXX.

27. On May 8, 2025, HUD acknowledged DFF's request, assigning it request number 25-FI-HQ-02542.

28. On May 29, 2025, HUD sent an identical acknowledgment email, which provided no additional details.

29. On June 23, 2025, DFF emailed HUD seeking a status update and requesting that HUD transmit any responsive documents to DFF via email.

30. On June 23, 2025, HUD responded that DFF's request was "still being processed."

31. DFF has received no subsequent communication from HUD regarding this request.

*HUD's Rules and Regulations Request (25-FI-HQ-02763)*

32. On May 7, 2025, DFF sent a FOIA request to HUD seeking the following:

(1) All validation studies and privacy impact assessments related to the use of automated systems or generative artificial intelligence to review or rewrite HUD's rules and regulations (including, but not limited to, pursuant to Executive Order 14219 "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative"[9] and Presidential Memoranda "Directing the Repeal of Unlawful Regulations.")[10]

(2) All final guidance, policy or enforcement memoranda, or directives created by your agency related to the use of automated systems or generative artificial intelligence to review or rewrite HUD's rules and regulations (including, but not limited to, pursuant to Executive Order 14219 "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative" and Presidential Memorandum "Directing the Repeal of Unlawful Regulations.")

(3) All source code, training materials, or parameters given to or used by automated systems or generative artificial intelligence tools used to review or rewrite HUD's rules and regulations (including, but not limited to, pursuant to Executive Order 14219 "Ensuring Lawful Governance and Implementing the President's

---

[9] Exec. Order No. 14,219, 90 Fed. Reg. 10,583 (Feb. 19, 2025), https://perma.cc/YH67-6V87.
[10] Presidential Memorandum on Directing the Repeal of Unlawful Regulations (Apr. 9, 2025), https://perma.cc/GV68-CVKL.

'Department of Government Efficiency' Deregulatory Initiative" and Presidential Memorandum "Directing the Repeal of Unlawful Regulations.")

(4) All searches, instructions, queries, or inputs into automated systems or generative artificial intelligence tools used to review or rewrite HUD's rules and regulations (including, but not limited to, pursuant to Executive Order 14219 "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative" and Presidential Memorandum "Directing the Repeal of Unlawful Regulations.")

(5) All outputs, recommendations, or reports generated by generative artificial intelligence tools used to review or rewrite HUD's rules and regulations (including, but not limited to, pursuant to Executive Order 14219 "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative" and Presidential Memorandum "Directing the Repeal of Unlawful Regulations.")

(6) All final guidance, policy or enforcement memoranda, or directives related to what steps HUD would take, if any, after generative artificial intelligence tools recommend HUD rules or regulations to rewrite or repeal.

33. The request sought records from January 20, 2025, through the date of the search.

34. On May 28, 2025, HUD acknowledged DFF's request and assigned it request number 25-FI-HQ-02763.

35. On May 28, 2025, HUD also sent DFF a more detailed acknowledgment letter stating that HUD had determined "unusual circumstances" exist such that "an extension of time beyond 20 additional days [was] needed." HUD further stated that DFF's request "may take beyond 30 days to process."

36. On June 23, 2025, DFF emailed HUD seeking a status update and requesting that HUD transmit responsive documents to DFF via email.

37. On June 23, 2025, HUD responded that DFF's request was "still being processed."

38. On June 24, 2025, HUD confirmed again that DFF's request was still in process but provided no estimated delivery date for production.

39. DFF has received no subsequent communication from HUD regarding this request.

9

*Exhaustion of Administrative Remedies*

40. As of the date of the Complaint, Defendants have failed to notify DFF of determinations regarding the FOIA requests described herein. Through Defendants' failure to respond within the time limits required by law, DFF has constructively exhausted administrative remedies on these requests.

## CLAIM FOR RELIEF

### Count 1 (Violation of FOIA, 5 U.S.C. § 552)

1. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

2. By failing to respond to Plaintiff's requests with determinations within the statutorily mandated time period, Defendants have violated their duties under 5 U.S.C. § 552, including but not limited to, their duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold responsive records.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Order Defendants to conduct adequate searches for any and all responsive records to Plaintiff's FOIA requests using search methods reasonably calculated to lead to discovery of all responsive records;

2. Order Defendants to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3. Enjoin Defendants from continuing to withhold any and all non-exempt responsive records;

4. Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

5. Grant any other relief this Court deems appropriate.

Dated: June 27, 2025                              Respectfully submitted,

/s/ *Daniel A. McGrath*

Daniel A. McGrath
(D.C. Bar No. 1531723)
Amy C. Vickery*
(*pro hac vice forthcoming)
Robin F. Thurston
(Bar No. 7268942)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
dmcgrath@democracyforward.org
avickery@democracyforward.org
rthurston@democracyforward.org